(1)

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

BERKSHIRE, SS

SUPERIOR COURT
CIVIL ACTION No. 2576CV00088

CHRISTIAN TOBIN )
)
Plaintiff )
)
)
v. )
)
)
DALTON FIRE DISTRICT INCORPORATED, )
DALTON FIRE DISTRICT BOARD OF WATER )
COMMISSIONERS, JAMES DRISCOLL, )
CAMILLUS CACHAT Jr., and MICHAEL )
KUBICKI in their official and individual capacity )
as Board Members; and MELANINE )
ROUCOULET in her official and individual )
capacity as treasurer and clerk )
)
Defendants )

VERIFIED COMPLAINT and
REQUEST FOR
INJUNCTIVE RELIEF

```
FILED
THE COMMONWEALTH OF MASSACHUSETTS
BERKSHIRE S.S. SUPERIOR COURT

MAY 1 4 2025

Lisa A. Denault-Viale
```

## INTRODUCTION

1.  Christian Michael Andrews Tobin (hereinafter "Plaintiff") brings this action for violations of the state whistleblower protections and false claims acts, retaliation, Massachusetts Civil Rights violations, breach of contract, breach of good faith and fair dealings, wrongful termination, civil conspiracy, and injunctive relief against the Dalton Fire District, Board of Water Commissioners, James Driscoll, (Chairman) Camillus Cachat Jr., (Board Member) Michael Kubicki (Board Member) and Melanie Roucoulet, (Treasurer/Clerk), in their official and individual capacities (hereinafter "Board" and or collectively known as "Defendants") in connection with the Board's decision to terminate Plaintiff's employment contract as Fire Chief of the Fire District of Dalton through the use of threats, unequal standards, collusion, and adverse employment actions.

## PARTIES

2.  Christian Michael Andrews Tobin, Plaintiff, is a former Dalton Fire District Fire Chief with an address of 7471 Emila Lane, Naples, Florida, 34114.

3.  Defendant, Dalton Fire District, (hereinafter "Department") is an incorporated municipal combined fire and water district located in Western Massachusetts with a principal place of business of 20 Flansburg Avenue, Dalton, Massachusetts.

EC

4.     Defendant, James Driscoll, (hereinafter "Chairman Driscoll") is the chairman of the Dalton Fire District with a principal place of business of 20 Flansburg Avenue, Dalton, Massachusetts.

5.     Defendant, Camillus Cachat Jr., (hereinafter "Cachat") is a board member of the Fire District with a principal place of business of 20 Flansburg Avenue, Dalton, Massachusetts.

6.     Defendant, Michael Kubicki, (hereinafter "Kubicki") is a board member of the Fire District with a principal place of business of 20 Flansburg Avenue, Dalton, Massachusetts.

7.     Defendant, Melanie Roucoulet, (hereinafter "Roucoulet") is the treasurer and clerk of the Fire District with a principal place of business of 20 Flansburg Avenue, Dalton, Massachusetts.

STATEMENT OF FACTS

8.     The Dalton Fire District's Board of Water Commissioners is an incorporated fire district board which consists of a three (3) member Prudential Committee, a three (3) member Board of Water Commissioners, a treasurer, an auditor, and a clerk.

9.     The Dalton Fire District is run as an independent district governed by the aforestated water commissioners (Board Members). The Dalton Fire District has not adopted the Strong Fire Chief Statute and is governed by its own set of by-laws and procedures.

10.    The Dalton Fire District is a blended fire department and ambulance service that consists of paid and voluntary members. Its members are comprised of fighters, paramedics and emergency medical technicians (EMT).

11.    In May of 2023, the former Fire Chief, James Peltier was terminated from his post after a unanimous Board vote and a further vote of no confidence by the Department's firefighters.

12.    The Department had seen a high turnover in leadership and weathered allegations of misconduct[1] over the last year. Plaintiff became aware of the vacant position and applied shortly, thereafter.

13.    Plaintiff has an extensive background in firefighting, departmental administration, emergency medical technician (EMT) training and experience in ambulance services from over his twenty-three year career in the field. Plaintiff, also had an expansive

---

[1] These allegations of misconduct include American Rescue Plan Act (ARPA) funds received from the Town of Dalton for the purchase of ladder truck, misuse in federal grant spending for the purchase of Thermal Imaging Cameras, misuse of credit card expenditures in travel, lodging, food, misuse of district vehicles/equipment and unqualified minors responding on emergency medical call.

knowledge of departmental rules and procedures, as well as, state and federal mandates required to run a department.

14.    Plaintiff had recently retired as Deputy Chief of Operations for the Greater Naples Fire Rescue District in the State of Florida and became interested in the position.

15.    Plaintiff has close family ties to Berkshire County as his father, James Tobin was the former Fire Chief of the Pittsfield Fire Department and this new position would continue the family tradition of serving the local community.

16.    Plaintiff applied and received two (2) interviews for the position, which consisted of the aforestated "Board" and Charlotte Crane, who was the President of the non-profit Dalton Ambulance & Rescue, Inc and Dalton Firefighter Association.

17.    The decision was made by the Board to offer the position to Plaintiff and utilize his knowledge and expertise to fix the struggling department. Plaintiff would also manage the ambulance service which, recently been run by a non-profit organization headed by Ms. Crane.

18.    On or about January 13, 2024, Plaintiff was offered the position of Fire Chief by the Dalton Fire District to which, he accepted shortly thereafter.

19.    The Board would not offer the Plaintiff a written employment contract. However, the Plaintiff understood the terms to be for a period of ten (10) years with an implied one (1) year employment agreement, at a minimum.

20.    The required hours for the position were typically 8am to 4pm Monday through Friday with Monday night firefighter drill time from 6:30pm to 8:30pm. The starting salary offered was $85,000.00 a year with a possible annual raise with five (5) week's paid vacation, five (5) paid sick days and two (2) paid personal days a year. Additionally, Plaintiff would eligible for health, dental and retirement benefits after thirty (30) days of employment.

21.    Further, Plaintiff would need to pass a medical exam, drug screen, and CORI check for employment. He would also need to work towards his Massachusetts accreditations to maintain his position.

22.    The job would require Plaintiff to be the Fire Chief and the Executive Officer of the Fire/Ambulance service in a combined management of both services. Plaintiff would also be eligible to provide practical functions for both services, if necessary.

23.    Additionally, Plaintiff would serve in a separate role of the Fire Warden of the Town of Dalton which is governed by the Dalton Select Board and not the subject of this litigation. Plaintiff resigned from this position on January 9, 2025, shortly after his termination as Fire Chief.

24.      Plaintiff was sworn in as Fire Chief on January 29, 2024, at the Stationary factory in Dalton, Massachusetts and handed control of the department on or about February 1, 2024.

25.      One of the first tasks Plaintiff undertook as Fire Chief was to draft a new Employee Handbook, which was adopted, thereafter by the Board. The Board's approval of  the new handbook was met with such a high regard, the Board requested Plaintiff draft an Employee Handbook for the Water Department, which was adopted in June of 2024. The new employee handbooks became effective July 1, 2024[2].

26.      First, Plaintiff was responsible for budgeting, inventory, departmental policies and procedures, training, scheduling, hiring and firing, and ad hearing to state and federal regulations.

27.      Secondly, Plaintiff would engage in the practical application of going out on calls, training and taking command, if on scene. The two functions of the fire and ambulance overlapped to form a full service first responder department.

28.      Plaintiff performed both job functions during his employment to a high standard.

29.      Plaintiff became an accredited Massachusetts Fire Chief in May of 2024 and had signed up for the other necessary fire prevention and EMT classes as required in Massachusetts.

30.      Plaintiff asserts he had signed up or completed all the necessary requirements to maintain his role as Fire Chief. Plaintiff was waiting for a slot to fulfill his practical EMT obligations as he had passed the written exam in early 2024 and was slated to complete Fire Prevention II when available.

---

[2] **June 25, 2024 The Board of Water Commissioners Meeting Minutes:**
- Board approved Policies 100-108 and 800
        Policy 100 Basic Rules of Parliamentary Procedure for Commission Open Meetings
        Policy 101 Fire Department Organizational Structure
        Policy 102 Workplace Substance Abuse Testing Policy including Marijuana
        Policy 103 Sexual Harassment Policy
        Policy 104 Diversity, Equity, and Inclusion Policy
        Policy 105 Reasonable Accommodation
        Policy 106 Social Media
        Policy 107 Citizens Complaints
        Policy 108 Hiring Paid On-Call ("Volunteers") and Job Description
        Policy 800 Respirator Protection Program (Massachusetts OSHA Compliance)

- Board approved Handbook would be backdated to July 1, 2024

**July 2 Agenda Packet**: "New Employment Handbook for Fire District (Water Department and Fire Department) - **Motion and Approval**.

31.    Plaintiff states that Massachusetts would not accept his Florida certifications and he was
working on his Massachusetts accreditations while, actively seeking available slots for
his practical applications which, the Board was fully aware of during his employment.

32.    In March of 2025, Plaintiff began to examine the departmental policies in place and
noticed the Department did not have a DEI policy or procedure in place as required for
Federal and State grants, or policies for State Office of Emergency Medical Services
(OEMS) for the operations of a licensed ambulance service. Plaintiff took  immediate
steps to correct this oversight.

33.    To be transparent, Plaintiff began addressing all departmental concerns, procedures and
or practices on record (Board Meeting Minutes). Plaintiff would oftentimes also provide
a written correspondence memorializing the same to the Board. These communications
would often be contained in the Board's monthly meeting minutes.

34.    In early April of 2025, Plaintiff discovered the department had an issue with prior written
grants and the  Interim Fire Chief, Robert Czerwinski had turned down monies of
recently award grants form SAFER (staffing for Adequate Fire and Emergency
Response) and FEMA (Federal Emergency Management Agency), because of falsehoods
in the application.

35.    Plaintiff was able to correct a federal grant through AFG (Assistance to Firefighter Grant)
and FEMA be used to purchase new bunker gear for the Department members. Plaintiff
reached out and corrected the issues allowing for new gear to be obtained.

36.    Also, in early April of 2025, Plaintiff further discovered the Department was not in
compliance with the Fair Labor and Standards Act (FLSA) and immediately brought the
issue to the attention of the Board.

37.    Plaintiff submitted his FLSA concerns regarding wage and hours to the Board via a
written email dated April 9, 2024 as follows:

On February 1, 2024, I began employment as the Fire Chief for the Dalton Fire
District. In this short time, I have found many improprieties that need correction,
including wage and hour violations. The district must comply with federal and state wage
and hour provisions, so I am seeking help.

The fire district has two classifications of firefighters and one administration position,
which is a concern.  I will attempt to convey my concerns in an orderly fashion:

Full-time employees (firefighters):

Full-time firefighters do not have an established work period or partial overtime
exemption under FLS § 207 (k).  Without the FLSA exemption, firefighters
should receive overtime for all hours worked beyond 40 hours in a workweek.

> When full-time firefighters receive overtime wages, the district does not include stipends (incentives) in the overtime calculation method, ass the FLSA requires. Without including the stipends, the employee's overtime wages are arbitrarily lower.

On-Call employees (firefighters):

> On-call employees receive an hourly wage for responding to emergency calls. They are also allowed to suffer or work on behalf of the fire district without compensation – this notion of "volunteering" is unlawful, according to the FLSA. On-call employees perform  inspections in the public, coordinate equipment repairs, attend fire department training, etc. Sometimes, they are compensated, and sometimes, they are not; the payment of wages is "selective," often depending on who the employee is.

Full-time Administrative employees:

> The administrative employee is a 40-hour-a-week employee who often works through lunch and beyond established business hours to meet the department's needs.  The employee is permitted to work these hours, sometimes 20 or 30 additional hours weekly.  "Salary," in this instance, has no bearing on whether the employee is entitled to overtime compensation.  The employee's position does not meet established FLSA provisions as a bona fide "exempt" administrative employee from receiving overtime.

These are the core issues; others may still need to be uncovered or addressed as we become aware. I am still looking into all the legal formalities and am grateful for any help you can give me.

38.   After sending aforestated correspondence to the Board regarding the FLSA issues, Plaintiff waited for the Boards response and to date no definitive action had been taken by the Board to Plaintiff's knowledge.

39.   Plaintiff sought direction from the Massachusetts Department of Labor Standards (DLS) regarding any additional state related concerns regarding employee classifications and compensation.

40.   Plaintiff also discovered the Department was not Occupational Safety and Health Administration (OSHA) compliant. The Plaintiff had concerns regarding the personal fitness of members and respiratory protection, including their ability to meet OSHA standards to perform the job.

41.   Plaintiff, additionally made inquiry regarding the public's access to the firehouse and the board's compliance with the American's With Disabilities Act (ADA).

42.     A referral was made to the Massachusetts Department of Labor Standards and a consultation was setup up for July of 2024.

43.     In June of 2024, Plaintiff setup a monthly public forum with the intent to engage with the public and explain where their tax dollars are going including, addressing any their concerns.

44.     In July of 2024, Plaintiff's February of 2024 decision to restructure the ambulance service and eliminate a one person paid ($65,000.00) ambulance director position should have increased efficiency. The proposal would save money as now other persons would be delegated a role in the multifaceted ambulance administration. The saved monies would be used to re-outfit existing members with Personal Protective Gear (PPE) and also compensate them for the additional task(s).

45.     It is alleged that Morgan McDonough was the next in line to fill the ambulance director position after the prior director was about to leave the post in July of 2024. The job was administrative in nature and consisted of mainly re-supplying the ambulance and the required medicine checks with Berkshire Medical Systems.

46.     It is alleged that Morgan McDonough advanced complaints about Plaintiff to the Board alleging improper conduct after she learned about the restructuring of the ambulance director's position.  Note that shortly after Plaintiff was placed on administrative leave, the ambulance restructure was reversed and said Morgan McDonough accepted the job from now Acting Chief Cachet.

47.     In early July of 2024, Plaintiff discovered that the department had a negative budgetary balance for the 2023 fiscal year. Plaintiff suspected possible wrongdoing by the Fire District Officials in conjunction with the loss of said funds. Plaintiff did not know the exact deficit at this time.

48.     It was at this point, that Chairman James Driscoll and other Board Members told Plaintiff to do it the "Dalton way" of managing things.

49.     Chairman Driscoll further cornered Plaintiff in the Fire Chief Office and reinforced the "Dalton Way" position before advising Plaintiff that steps would be taken, if necessary and complaints were mounting.

50.     When the Plaintiff inquired about these alleged complaints, Chairman Driscoll told Plaintiff they were confidential.

51.     After these interactions, Plaintiff suspected financial impropriety by the Board and or a possible cover-up in the management of public funds.

52.     Plaintiff alleges all Board Members including, the Treasurer/clerk had the ability to sign off on all purchases, payments and or other uses of departmental funds with little to no oversight. It is further alleged that these individuals misappropriated or covered up the

use of said funds, acquiesced to the use of said funds for improper purposes and or utilized said funds for personal use.

53. On or about July 11, 2024, Plaintiff sought clarification of the "Dalton Way" of managing things in a titled "Open letter to the Public and Board of Fire Commissioners." In his open letter, Plaintiff identified several concerning issues as follows:

> Falsification of records for state and federal grants, missing funds and fire equipment, unauthorized disposition of vehicles and equipment, significant financial debt, inappropriate behavior and sexual relationships within the fire station and between employees, misuse of public funds for personal travel, hotels and dining, state and federal wage violations that remain unaddressed, previous and ongoing open meeting violations, kickbacks on fire department purchases and other improprieties.

54. The Open Letter dated July 11, 2024 was never released to the Public and only circulated to the Board and internal department members. Plaintiff did not release the letter to the Public in hopes that the Board would address the issues outlined and bring the department in to compliance.

55. Plaintiff alleges the Board response to the open letter at first was silence. It is alleged the Board was becoming worried by Plaintiff's suggestions, investigations and concerns. The Board conveyed to Plaintiff that there were alleged complaints about him, morale was low and the Plaintiff had been shrieking his duties.

56. Kubicki, personally, conveyed to Plaintiff that is how the last chief got fired. Plaintiff asserts that it implied onto him to either conform or be fired. It was clear steps were being taken to control the Plaintiff and exert pressure to bend to the Board's possible illicit practices.

57. On or about July 11, 2024, Plaintiff submitted a written request to the Board seeking to take vacation time from July 15, 2024 to July 26, 2024. Plaintiff would return to work on July 28, 2024.

58. On or about July 12, 2024, Board Member Michael Kubicki approved Plaintiff's request and signed and dated said request form.

59. While on vacation, on or about July 24, 2024, Plaintiff drafted and circulated via email, a four (4) page ambulance budget proposal and other budgetary suggestions regarding user fees and ideas on how to raise capital to buy a ladder truck. The Plaintiff received feedback from a few individuals.

60. Plaintiff returned to work on July 28, 2024.

61.    On or about July 29, 2024, Plaintiff continued to work on a proposed budget and made a request to Melanie Roucoulet for the actual budget deficit number, which she replied as negative $183,084.00.

62.    Plaintiff also inquired about the remaining funds available for the 2024-FY, to which, no response was given. Plaintiff suggested a forensic audit to trace the missing funds given the amount of the deficit to the Board.

63.    After Plaintiff request for the actual departmental budget deficiency number and remaining funds for FY-2024, the Board requested they have an executive secession regarding the complaints they allegedly received regarding Plaintiff's conduct. Plaintiff demanded a public meeting.

64.    On or about July 30, 2024, the Board held an open meeting and Kubicki created a new purchase order policy then made a motion to accept the new procedures, which passed unanimously. Chairman Driscoll informed the Board and meeting attendants that the District is in a deficit of ($183,000) due to overtime issues and questions by Daniel Filault, Chairman of the Prudential Board were brought up regarding the Commission having a Forensic Audit.

65.    On or about August 2, 2024, Plaintiff filed an Open Meeting Law Complaint with the Massachusetts Attorney General's Office regarding the alleged meeting violations and other observations. In an email dated August 26, 2024, Plaintiff outlines his position as follows:

> On August 1, 2024, I filed an Open Meeting Law Complaint Form regarding the July 30, 2024, Board of Water Commissioners meeting. This complaint outlines specific observations from that meeting, as well as a historical pattern of similar issues that I have witnessed in my capacity as the Fire Chief of the Dalton Fire District.
>
> I.    Violation of Open Meeting Law and Prior Coordination:
>
> It has come to my attention, and I have personally observed, that public coordination among Water Board Commissioners frequently occurs in the office of the Treasurer/Clerk, Melanie Roucoulet. This practice violates G.L. c. 30A, §§ 18-25, and 940 CMR 29. 03, which mandate that all deliberations among a quorum of a public body must occur in an open session unless an executive session is properly convened. Additionally, coordination by phone between Chairman James Driscoll and board member Mike Kubicki is a routine practice that further contravenes these laws.
>
> II.    Insufficient Meeting Notices:

The agendas for meetings often fail to provide sufficient detail to inform the public of the topics to be discussed, violating G.L. c. 304A, § 20(b), which requires that notice must include a listing of topics and the chair reasonably anticipates will be discussed. The vague agenda items currently posted do not meet this standard, depriving the public of their right to be adequately informed.

III.    Destruction of Meeting Records:

It is a matter of grave concern that the Treasurer/Clerk, Melanie Roucoulet, has been "destroying" the audio recordings of Open Meetings. Given that the minutes of these meetings are neither accurate nor reflective of the actions taken by the Board of Water Commissioners, these audio recordings are essential for ensuring transparency. Materials presented at the meetings are not preserved. Furthermore, meeting minutes are not preserved. Furthermore, meeting minutes are not provided to the public to review, before the Board formally adopts the minutes as the official record. No one but the Board of Water Commissioners, and the Treasurer/Clerk, are privy to the meeting minutes as the official record. No one but the Board of Water Commissioners and the Treasurer/Clerk are privy to the meeting minutes for public accuracy. Under the Public Records Law, G.L. c. 66, § 10, and the State Retention Schedule, such records must be preserved. The deliberation destruction of these recordings undermines the integrity of the public record and raises serious questions about compliance with both the Open Meeting Law and Public Records Law.

IV.    Lack of Accessibility for Public Meetings:

I am deeply troubled by the continued inaccessibility of meetings to individuals with disabilities. Despite the requirements of the Americans with Disabilities Act (ADA) and G.L. c. 30A, §20(d), which mandates that all meetings be held in locations accessible to persons with disabilities, meetings are still being conducted in non-compliant venues. The frequent use of the inaccessible second floor of the fire department is particularly egregious, especially when a compliant and accessible location, the "Stationary Factory" across the street, is available.

V.    Inadequate Notification of August 8, 2024, Meeting:

Regarding the August 8, 2024, meeting, the agenda items "To discuss complaints against Chief Tobin" was wholly insufficient to notify the public of the nature of the discussion, "violating G.L. c. 30A, §20(b).  I formally requested an open public meeting on August 5, 2024, giving the Board more than sufficient time to provide proper notice.  The Attorney's response, which focused on the presence of legal counsel, is irrelevant and does not address the core issue of inadequate public notification.  The request for an attorney only further underscores the need for transparency, particularly when the nature of the complaints themselves was not disclosed.

VI.    Failure to Complete Required Training:

It is essential to note that despite years of service, neither the commissioners nor the Treasurer/Clerk have completed the required training on the Open Meeting Law, as mandated by 940 CMR 29.07(3). This lack of training is directly contributing to the ongoing violations and undermines the lawful governance of the Dalton Fire District. The continuous disregard for legal obligations reflects a pattern of negligence that cannot be ignored.

66.    On or about August 5, 2024, Chairman Driscoll came to Plaintiff's office and informed Plaintiff of an Excessive Session for August 8, 2024, regarding allegation of improper conduct on part of Plaintiff.

67.    Plaintiff requested an open meeting format.

68.    On or August 8, 2024, the Board held an open meeting, at the request of Plaintiff and advanced vague complaints alleging sexual harassment against Plaintiff. The Board at this meeting placed the Plaintiff on paid administrative leave, pending further investigation.

69.    Plaintiff claimed the complaints and fabricated narratives against him were retaliatory in nature. It is clear that after Plaintiff began questioning the financial practices and workplace standards violations at the department, the Board had prompted him to look the other way.

70.    Plaintiff alleged that Board Members Driscoll, Kubicki, and Cachat along with Treasure/Clerk Roucoulet held private meetings and or engaged in private conversations regarding Plaintiff inquiries and or investigations with state and federal departments.

71.    Plaintiff alleges Board Members Driscoll, Kubicki, and Cachat along with Treasure/Clerk Roucoulet were involved in a civil conspiracy to cover-up the budget deficit and or their direct involvement with the misappropriated funds.

72.    The Board and Roucoulet had direct knowledge, participated in or acquiesced to the prior Fire Chief misuse and or misappropriation of town funds as follows: improper credit card expenditures and sign offs by the Board, town paid trip to Nashville, TN, prior chief received kickbacks from the Dalton Fire District contracts, he had set up with the fire equipment company he was employed by, missing grant documentations and thermal imaging equipment, twenty thousand dollars unaccounted for from the fireman retention fund, payments or alleged reimbursements to Board members with no supporting documentation and personal use of town vehicles and or equipment.

73.    The Board failed to notify the public, never attempted to recoup said monies nor prosecute any alleged offenders. The Board instead participated in a cover-up of the misused and or misappropriated funds and equipment.

74.    On or about August 20, 2024, The Board provided Notice to Plaintiff regarding complaints and or concerns they had alleged received from department members. The alleged complaints were mostly unsigned and provided little to no substance.

75.    On or about August 26, 2024, Plaintiff emailed the Board regarding his Open Meeting Complaints and concerns.

76.    On or about September 5, 2024, The Board placed the Plaintiff on extended leave pending a third party investigation.

77.    The Board hired Comprehensive Investigations and Consulting (CIC) to perform the investigation. It is alleged the investigation was conducted by Kerry Gilpin.

78.    Plaintiff alleges he was never personally contacted by CIC or Gilpin. It is unknown if CIC or Gilpin contacted Plaintiff's counsel to reschedule an interview.

79.    Plaintiff alleges an improper investigation occurred to which, he had no opportunity to respond and or was not fully made aware of the allegations. The record is clear that a hasty investigation was conducted in a short period of time.

80.    Plaintiff had prepared a general timeline of events[3] and had no opportunity to be heard.

---

[3] **Plaintiff's General Timeline of Events:**

July 14, 2023: Applied for the position
December 22, 2023: Email to Melanie Roucoulet of requirements for EMT certification in Massachusetts

January 5, 2024:  Undated Treasurer/Clerk Melanie Roucoulet on EMT credentialing.
January 12, 2024: Second interview - accepted position
January 13, 2024: Melanie Roucoulet (Treasurer/Clerk) emailed me employment agreement, one page, nothing about meeting qualifications within a certain time frame.
January 29, 2024: Department physical and Swearing in Ceremony

February 1, 2024: Official start date
February 5, 2024: Town of Dalton, Select Board meeting, Town of Dalton Forest Warden (Fire Officer meeting - no complaints / Officers Chris Cachat- Assistant Chief / Captain Mike Cachat / Safety Berry Smith & Steve Perry / Fire Prevention Charlotte Crane / Apparatus Maintenance Dennis Tinker)
February 21, 2024: FLSA Boot camp class for Volunteer, Combination (Paid/Volunteer departments) by Curt Varone - Attorney) attended by Treasurer/Clerk Melanie Roucoulet, Firefighter Assoc Officer Dennis Tinker, and myself.
February 26, 2024: Fire Officers meeting - no complaints
February 27, 2024: Commission Meeting / Agenda

March 4, 2024:  Open Meeting all training - required by State for elected and appointed officials
March 11, 2024: Meeting with Morgan (Ambulance Director) about her inappropriate email and conduct in the firehouse.
March 13, 2024: Meeting with full-time Lieutenants (Officers) - no complaints.
March 26, 2024: Commission Meeting / Agenda.

April 9, 2024: Email to Commissioners regarding Wage & Hour Concerns under FLSA, Chairman Driscoll responded April 10 that he was not aware or had an understanding.

April 10, 2024: Wahconah, HS, public presentation presented by me on Fire District budget and future.
April 29, 2024: Received confirmation on Credentialing by Massachusetts Fire Service Commission - Fire Chief.
April 30, 2024: Commission Meeting / Agenda

May 23, 2024: First Community Meeting at firehouse.
May 28, 2024: Commission Meeting / Agenda.

June 3, 2024:  Emailed Commissioner about Wage and Hour concern and the importance of compliance.
June 13, 2024: Testing scheduled for OSHA compliance fire hose, ladders, and fire pumps - this is supposed to be
          done annually. I was the first to do this in several years.
June 20, 2024: Second Community Meeting at firehouse.
June 25, 2024: Commission Meeting / Agenda (Agenda not found on website).

July 1, 2024: Letter to Community Group - Emphasizing the Importance of First Responder' Safety Measures
          (Respirator Protection Program 29CFR 1910.134, Fitness for Duty NFPA 1582, Legal Necessity for
          Compliance, First Responder Respirator Protection and Medical Testing, Cost Evaluation).
July 2, 2024:  Commission Meeting / Agenda - Handbook adoption.
July 8, 2024:  Officer Meeting (no complaints).
July 9, 2024:  Email from Prudential Chairman Daniel Filault of State Ethics Training which was required.
July 11, 2024: Open Letter to Public and Board of Commissioners (only sent internally).
July 12, 2024: Time-off Request signed by Commission Kubicki (July 15 - July 26) If I was off without notice the
          commissioners had time to notify me.
July 24, 2024: OSHA submission for help with compliance
July 23, 2024: Email from Tequan Mason, Mass. Dept. of Labor Standards regarding Wage and Hours, this letter
          was shared with Commissioners and at the July 30, commission meeting.
July 24, 2024: Emailed OSHA requesting assistance, Adam Hartnett, CSP (Department of Labor) responded the
          same day.
July 24, 2024: Letter to Public Community Group regarding ambulance user fees. (I received a legal opinion from
          the District attorney on the use of user fees recovered for ambulance services, this forms the basis for
          the letter.) Improve Property Tax, Compliance Officer, Respiratory Protection and Medical Testing,
          Ambulance replacement, Engineering facilities (ADA), Ladder truck apparatus, and budget
          stabilization.
July 25, 2024: Third Community Meeting at Firehouse
July 29, 2024: Email from Treasurer/Clerk Melanie Roucoulet that deficient is $183,084.00. I asked what are the
          remaining funds for FY2024 - no response.
July 29, 2024: Letter to Commissioners; Re: Agenda item "FY23 Financials from Auditors for Fire Department"
July 30, 2024: Commission Meeting / Agenda
July 31, 2024 @10:43: Letter to Commissioners - Re: FY23 Financials from Auditors and Public Records Request.
July 31, 2024:  locked out of Clerk/Treasurer Office, Melanie Roucoulet

August 1, 2024: Emails between myself and Commissioner Kubicki regarding recent activities.
August 1, 2024: Berkshire Regional Planning Commission (Christie Lewis) verify to conduct ADA/ADAA
          compliance of district facilities, policies, etc.
August 2, 2024: Email requesting Melanie Roucoulet notify of their FMLA rights. She would not do so.
August 2, 2024: Open Meeting Complaint filed.
August 3, 2024: Letter to Commission, Re: Substantial bullet points on why an Investigation and Forensic Audit are
          necessary
August 5, 2024:  Notified by Chairman, in person, in Chief's office of executive meeting August 8@ 0900.
          Requested public meeting.
August 6, 2024:  Emailed Chairman Driscoll of Wage and Hour concern regarding Treasurer/Clerk position and
          possible solution.
August 8, 2024:  Public meeting of complaints /Agenda "To discuss complaints against Chief Tobin"
August 9, 2024:  Berkshire Regional Planning Commission scheduled walk through for ADA/ADAA (Believed it
          was canceled).
August 16, 2024: Email to State IGO asking for help on "cover-ups," "corruption,", and other improprieties.

81.    Plaintiff and his counsel scheduled an interview date only to discover the investigation had already been concluded.   The investigator finished the report without ever talking to Plaintiff.

82.    Plaintiff requested a copy of the report and has not received a copy to date.

83.    The Board based Plaintiff's termination on allegations of improper conduct, inappropriate workplace behavior in violation of the district handbook Section 2.1, allegedly taking time off without authorization, and or not making himself available within a reasonable time for an interview by the investigator, either in person or by video conference.

84.    The Board further alleges Plaintiff did not complete all requirements for continued employment, including obtaining a Massachusetts Emergency Medical Technicians Certification and failure to pass the fire prevention officer level II certification.

85.    The Plaintiff is currently unaware of the specific alleged improper conduct complained about as the Board refused to release it investigative report and conclusions. Plaintiff was only provided with alleged unsigned complaints.

86.    It is alleged that Kubiciki offered false statements regarding the improper time-off as he had personally approved said vacation time on or about July 12, 2024. Further, the Plaintiff was offered five (5) weeks paid vacation as a benefit of his employment.

---

August 19, 2024: Executive session to discuss open meeting violations.
August 20, 2024: Public Meeting to discuss duties of Water Commissioners and Prudential Committee.
August 20, 2024: OSHA walk through (Dawn Toon) found major violations.
August 20, 2024: Certified mail of "complaints" by the District
August 22, 2024: Community Meeting canceled by [Interim Chief] Chris Cachat.
August 24, 2024: Letter to Commissioners about unsubstantiated complaints, following the employee handbook, etc.
August 26, 2024: Letter to Commissioners about Violations of Open Meeting Law, Insufficient Meeting
                 Notices, Destruction of Records, Lack of Accessibility to Meetings, Failure to Complete
                 [State] training.
August 27, 2024: OSHA Lists 7 Major Violations.
August 29, 2024: Text message from Town Manager (Thomas Hutcheson) that Scanlon accounting was
                 concerned about Dalton Fire District - dozens of accounts overspent.

September 3, 2024: Received letter from fire district that there would be an open meeting, September 5
                   regarding my suspension.
September 5, 2024:  Public meeting to discuss Chief Tobin's suspension.
September 11, 2024: Letter to Commissioners for placing complaints (unsubstantiated) in my employee file without
                    notification in violation of Chapter 149, Section 52.
September 13, 2024: Letter to Commissioners on Accountability in Finance.
September 19, 2024: Letter to Commissioners, Re: Demand for Investigation into Financial Improprieties,
                    Mismanagement, and Public Accountability.
September 19, 2024: OSHA Lists 7 Major Violations.

87.     The Board was fully aware that the Plaintiff had been working to fulfill his Massachusetts accreditations for EMT and Fire Prevention II. Plaintiff had already completed and passed the written portions and was awaiting slots for the practical applications for both certifications. Note, Plaintiff began employment on February 1, 2024 and completed all but, the practical applications which were only offered at one or two specific times a year.

88.     The new employee handbook adopted by the department, effective, July 1, 2024, requires the employer to show just cause to terminate employment based on substantial evidence and a fair and impartial investigation. The Board and Plaintiff are bound by this standard and Board did not present fair and impartial evidence.

89.     Plaintiff alleges that the Board lacked "just cause" to move forward with his termination and the decision was not supported by substantial evidence nor aided by a fair and impartial investigation.

90.     On or about January 7, 2025, Plaintiff's employment was terminated by the Board after an expeditious vote.

91.     At the hearing, the Board relied on the investigator's report and conclusions to support their decision. The Board did not share the report with Plaintiff before the hearing and only provided a brief summary of its contents at hearing.

92.     The Board did not allow Plaintiff the ability to rebut or contrast the report's conclusions and or its findings.

93.     Plaintiff alleges the Board had terminated his employment to conceal their illegal practices and said termination of Plaintiff was in itself illegal. The Board has not nor could advance lawful reason for Plaintiff's termination.

94.     The Plaintiff has been harmed by the false allegations contained herein in an effort by the Board to conceal a large budget deficit and accountability for said missing funds. Plaintiff seeks back pay, interest, costs, treble damages and reinstatement.

COUNT I
WHISTLEBLOWER ACT VIOLATION
(M.G.L. c. 149, §185)

95.     Plaintiff repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

96.     Plaintiff engaged in protected activities by filing complaints or seeking guidance from FLSA, OSHA, ADA, FEMA and DSL. Plaintiff reported all concerning issues to the corresponding agencies and or memorized the issues at Board Meetings for public transparency.

97.   Plaintiff further advised Defendants of the wage and hour violations, unused grant monies and or misappropriations, lack of public accessibility for public meetings, and employee fitness/gear issues.

98.   Plaintiff further engaged in budgetary work for the District only to discover a large monetary deficit for the past and current fiscal year.

99.   Plaintiff suggested a forensic audit and was placed on adminstravie leave, the next day.

100.  Plaintiff had placed the Defendants on Notice of all his protected activities.

101.  Plaintiff was told by Defendants that he needed to do the "Dalton way" of managing things.

102.  It is alleged Defendants held unsanctioned meetings and conspired to conceal illicit activities.

103.  Defendants further placed the Plaintiff on extended leave, indefinitely and ordered an investigation, to which, has not been released.

104.  Plaintiff was terminated for making complaints to the aforestated administrative agencies, failing to conform to illegal district practices and or conceal illicit activities by the Defendants.

105.  Plaintiff has not received a copy of the investigators report nor was interviewed by the investigator.

106.  As a result of the Defendants actions, Plaintiff has suffered damages in an  amount to be proven at trial.

COUNT II
FALSE CLAIMS ACT
(M.G.L. c. 12, §5B False "qui tam")

107.  Plaintiff repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

108.  The Defendants knowingly presented or caused to be presented, false or fraudulent claim for payment or approval to the state or its political subdivisions and or misappropriation of public property.

109.  The Defendants submitted false records or statement(s) using or causing to be used a false record or statement material fact to pay false claims or self serving invoices and or retention of public property for private use.

110.  The Defendants misappropriated state grant monies or approved unauthorized uses of said funds.

111.   The Defendants engaged in a conspiracy to conceal and or misappropriate state funds and or retain public property for personal use.

112.   The Defendants retaliated against Plaintiff when he discovered their actions.

113.   Plaintiff seeks to recover under a "Qui Tam" action theory including seeking treble damages, attorney fees and costs.

COUNT III<br>RETALIATION

114.   Plaintiff repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

115.   Plaintiff was engaged in protected activities when he raised concerns regarding perceived state and federal policy/procedure violations.

116.   Plaintiff was engaged in protected activities when he raised concerns regarding perceived state and federal hour and wage violations.

117.   Plaintiff was engaged in protected activities when he raised concerns regarding the Board's large budget deficit and a call for a forensic audit.

118.   Plaintiff called for a forensic audit, prompted the Defendants to place the Plaintiff on administrate leave the next day.

119.   The Defendants alleged sexual harassment, unauthorized time-off and failure to obtain accreditations.

120.   The Defendants terminated the Plaintiff's employment shortly thereafter.

121.   Plaintiff alleges a causal link between his protected activities and the actions of the Defendants.

122.   As a result of the Defendants retaliatory actions, Plaintiff has suffered damages in an amount to be proven at trial.

COUNT IV
MASSACHUSETTS CIVIL RIGHTS (M.G.L. c. 12, §§11H, I) The Dalton Fire District, Inc., Board of Water Commissioners James Driscoll, Camillus Cachat Jr., Michael Kubicki, in their official and individual capacity.

123.   Plaintiff repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

124.   Defendants, in their official and individual capacities have attempted to interfere with, and interfered with Plaintiff's exercise and enjoyment of rights secured by the

constitution and laws of the United States, and the constitution and laws of the Commonwealth, by threats, intimidation, and coercion, including his right to free speech and equal protection of the laws.

125.    It is alleged once Plaintiff discovered gross safety and regulation violations, including a large budget deficit, he was told by the Board Chair, James Driscoll, Member, Camillus Cachat Jr. and Member Michael Kubicki, to do it the Dalton Way of managing things or be removed.

WHEREFORE, Plaintiff demands judgment against the Defendant on this Count plus interest and costs of this action, and reasonable attorney fees as provided under M.G.L. c. 12, §11I.

## COUNT V
## CIVIL CONSPIRACY

126.    Plaintiff repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

127.    The Defendants had a common scheme or agreement to induce the Plaintiff to overlook a large budget deficit under their direct control and or minimize significant state/federal policy procedure violations.

128.    The Defendants were clear that Plaintiff do things the "Dalton way" of managing things or be fired.

129.    The Defendant held private meetings and influenced or encouraged complaints against Plaintiff.

130.    Plaintiff was placed on paid administrative, which was extended and ultimately resulted in his illegal termination.

131.    Defendants orchestrated a biased investigation and refused to release the results.

132.    The Defendants relied on unsupported claims and endorsed fallacies to support Plaintiff's removal.

133.    Plaintiff alleges the common scheme and or plan by Defendants is to conceal their culpability in misappropriated fire district funds and illegal Board practices.

134.    As a result of the Defendants common scheme, Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT VI
## BREACH OF CONTRACT

135.  Plaintiff repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

136.  Plaintiff had an implied employment contract with the District.

137.  Plaintiff fully performed his duties and obligations under the contract.

138.  The District failed to recognize protected conduct and or attempted to conceal misappropriated district funds and or their lack compliance to the applicable federal and state standards.

139.  The District breached its contract by terminating Plaintiff's employment, while he was engaging in protected conduct and refused to be complicit in illegal activities.

140.  As a result of the Defendants breach, Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT VII
## BREACH OF GOOD FAITH AND FAIR DEALINGS

141.  Plaintiff-in-Counterclaim repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

142.  Every contract implies good faith and fair dealing between the parties to it.

143.  The implied covenant of good faith and fair dealing ensures that no party will do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

144.  By willfully committing the aforesaid acts and omissions, Defendants breached the implied covenant of good faith and fair dealing.

145.  As a result of Defendants breaches of the implied covenant of good faith and fair dealing, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT VIII
## WRONGFUL TERMINATION

146.  Plaintiff repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

147.  Plaintiff accepted employment as the Fire Chief for the Dalton Fire District.

148.    Plaintiff engaged in protected activities by making complaints to administrative agencies and requesting a forensic audit of the missing budgetary funds.

149.    The Defendants told Plaintiff do things the "Dalton way" of managing things or be fired to which Plaintiff refused.

150.    The Defendants held private meetings and or influenced or encouraged complaints against Plaintiff by his subordinates.

151.    Plaintiff was placed on paid administrative leave directly after suggesting a forensic audit and placed on indefinite leave one (1) month later.

152.    The Defendants orchestrated a biased investigation and never released the findings.

153.    The Defendants engages in illegal activities and wrongfully terminated Plaintiff's employment.

154.    As a result of the Defendants illegal activities, Plaintiff has suffered damages in an amount to be proven at trial.

## COUNT IX
## INJUNCTIVE RELIEF

155.    Plaintiff repeats and realleges each and every previous paragraph of the Complaint as if fully set forth herein.

156.    Plaintiff and the District had an implied agreement that was willfully breached by Defendants and or their illegal conduct.

157.    Plaintiff's position as fire chief is a specialized job that is unique and requires highly skilled training, for which, Plaintiff is well qualified.

158.    To avoid permanent injury and irreparable harm to Plaintiff, issuing the injunction outweighs the harm or damage to the District.

159.    Granting this injunction will not disserve the public interest due to the immediate irreparable harm, it will prevent.

160.    Plaintiff requests that this Court waives all security relative to this action.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the Court:

1.    Find in favor of Plaintiff based on the foregoing assertions, back pay, interest and award treble damages costs and attorney fees;

2.  Enter a Judgment that allows for Plaintiff reinstatement of fire chief with back pay, interest, costs, and Attorney fees; and

3.  Enter a preliminary and permanent injunction against the Board and require Plaintiff to be reinstated to the position of fire chief.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL CLAIMS SO TRIABLE.**

Dated: May 10, 2025

Respectfully submitted,

Christian Tobin
Plaintiff,
By his attorneys,

Elizabeth J. Quigley, Esq. (BBO#408910)
Jonathan Zepka, Esq. (BBO#685373)
Quigley & Zepka
27 Henry Avenue
Pittsfield, MA 01201
413-499-5476
kel.quigley @verizon.net

VERIFICATION

I, Christian Tobin, state that I have read the allegations set forth in the Verified Complaint and Request for Preliminary Injunction, and that they are true to the best of my knowledge, information and belief, which are signed under the pains and penalties of perjury.

_____                                        May 10, 2025
Christian Tobin


STATE OF FLORIDA

COLLIER, SS.                                                          May 10 2025

     On this 10th day of May 2025, before me, the undersigned notary public, personally appeared Christian Tobin, proved to me through satisfactory evidence of identification, which was a Driver's license, to be the person whose name is signed on the preceding or attached documents, and acknowledged to me that she signed it voluntarily for its stated purpose.

Notary Public State of Florida
Rosemary Kelly
My Commission HH 454668
Expires 10/16/2027

Rosemary Kelly
Notary Public
My Commission Expires 10/16/2027